## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                          )
James P. O'Donoghue                       )
                                          )
and                                       )
                                          )
Adriana G. O'Donoghue,                    )
                                          )
Individually and for themselves           )
and all others similarly situated,        )
                                          )
                        Plaintiffs,       )
                                          )      **CIVIL ACTION NO. 10-11175-DPW**
        v                                 )
                                          )
Bank of America Corporation,              )
and                                       )
BAC Home Loans Servicing, Inc.,           )
and                                       )
Countrywide Home Loans, Inc.,             )
and                                       )
Balboa Insurance Services, Inc.,          )
and                                       )
Balboa Insurance Company,                 )
and                                       )
Newport Insurance Company,                )
and                                       )
Deutsche Bank National Trust Company,     )
and                                       )
Guaetta and Benson, L.L.C.,               )
                                          )
                        Defendants.       )
_____)

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS BANK OF AMERICA
CORPORATION, BAC HOME LOANS SERVICING, L.P., COUNTRYWIDE HOME
LOANS, INC., AND DEUTSCHE BANK NATIONAL TRUST COMPANY'S MOTION
FOR SUMMARY JUDGMENT**

In accordance with Local Rule 56.1 of the Local Rules of the United States District Court

for the District of Massachusetts, Plaintiffs hereby submit these Statements of Disputed Material

Facts in support of Plaintiffs' Opposition to Defendants Bank of America Corporation (hereinafter "BAC"), BAC Home Loans Servicing, Inc.[1] (hereinafter "BACLP"), Countrywide Home Loans, Inc. (hereinafter "Countrywide"), and Deutsche Bank National Trust Company's (hereinafter "Deutsche Bank") (collectively, the "Defendants")  Motion for Summary Judgment.

## STATEMENTS OF UNDISPUTED MATERIAL FACTS

1. Apparently on October 10, 2003, NCMC assigned one of the mortgages granted to Plaintiffs in blank. Exhibit A (BANA 000530-000531) making it a void assignment. Which mortgage was assigned is not specified.

2. On August 1, 2008, Craig Price of CIS assured Plaintiffs by fax that "You don't have to do anything else I can work with your loan officer to make sure that coverage is in place so your home loan closes as scheduled." Am. Comp. ¶ 123. Exhibit E.

3. The fax sent to Plaintiffs on August 1, 2008 was sent on Countrywide Insurance Agency of Massachusetts, Inc. (hereinafter "CIAM") letterhead. Am. Comp. ¶ 124. Exhibit E

4. CIAM underwent Voluntary Dissolution on November 7, 2005. Am. Comp. ¶ 125.

5. CIAM was not inexistence in 2008. Am. Comp. ¶ 126.

6. Craig Price was an agent of CIS. Am. Comp. ¶ 127.

7. Craig Price misrepresented his agency of CIAM. Am. Comp. ¶ 128.

8. Plaintiffs sought and received an agreement with CHLS to pay monthly into their mortgage escrow and have the escrow pay their property taxes and hazard insurance. Exhibit D (J. O'D. Dep. at 42:9-43:17).

9. The escrow payment was later established by agreement (at $696.64) and paid from June 2008 through December 2008 (as shown by Plaintiffs' loan payment history. Docket 53-26 (BANA 000235-000251).

---

[1] Apparently more properly titled BAC Home Loans Servicing, L.P..

10. Timely payment of the insurance premium by CHLS was negligently not made. Plaintiff contacted CHL/CHLS and was advised the nonpayment was an error that would be corrected. Exhibit D (J. O'D. Dep. at 40:10-49:13).

11. Plaintiffs reasonably believed that the assurance given by CIS to pay the premium on the Balboa policy had been fulfilled and the policy was in effect as agreed. Am. Comp. ¶ 148. Exhibit O (December 12, 2008 M2 statement).

12. CIS failed to properly follow through on Plaintiffs' insurance coverage and premium payment. Am. Comp. ¶ 149.

13. By the December 12, 2008 CHL/CHLS M1 statement, not received by Plaintiffs until after Christmas, CHL/CHLS had replaced Policy # THB372780 with a lesser quality and more expensive lender placed product (Newport Policy # ON6381208 costing $1,360.00) issued by a subsidiary of its parent corporation not licensed by the Massachusetts Insurance Commissioner to do business in Massachusetts. Am. Comp. ¶ 150.

14. Defendant Newport provided documentation (Document 22-5 page 1 of the Motion to Dismiss Appendix) that Newport Policy # MP 4800-0100 with named insured CHL for Plaintiffs lists "Blanket Vandalism Incl. Fair Plan" as a checked and therefore included endorsement provision. Am. Comp. ¶ 151.

15. The premium charged for $25,000 in vandalism coverage was $7,500 per year but the premium listed on the CHL/CHLS monthly statement was only $1,360. Am. Comp. ¶ 152.

16. The December 12, 2008 CHL/CHLS M2 statement, not received by Plaintiffs until after Christmas, still listed the Balboa Policy # THB372780. Am. Comp. ¶ 153. Exhibit O (December 12, 2008 M2 statement).

17. On December 15, 2008, City of Lawrence Inspectional Services' inspector Glenn Fleming sent Plaintiffs a fax indicating satisfactory completion of work at the Property. Am. Comp. ¶ 155. Exhibit P.

18. On December 19, 2008, gasoline was smelled in the rental apartment and the building was ordered evacuated by the Lawrence Fire Department and the Lawrence Inspectional Services Department. Am. Comp. ¶ 156. Exhibit D (J. O'D. Dep. at 65:24-70:24).

19. The official Lawrence Fire Department Incident Report confirms the odor of gasoline in the first floor apartment. Am. Comp. ¶ 157.

20. Gas and electrical utilities were ordered to be shut off and windows opened for ventilation in the midst of a northeast snowstorm. Am. Comp. ¶ 158.

21. There was no way for the gasoline to get on the floor of the rental unit except by vandalism. Am. Comp. ¶ 159.

22. Plaintiffs notified CHL/CHLS about the vandalism and asked for assistance from Balboa for immediate remediation and protection of the property. Am. Comp. ¶ 160. Docket 58-3 (NIC 000065-000066); Docket 53-25 (NIC 000049-000067); Docket 59-2 (NIC 000032-000035); Docket 53-23 (NIC 000036-000038).

23. On December 23, 2008, Jason Meyer, a Claim Representative II with Newport of the Balboa Insurance Group contacted CHL and acknowledged receipt of CHL's claim. Am. Comp. ¶ 161.

24. Mr. Meyer speculated that a field adjuster might need to inspect the property. Am. Comp. ¶ 162.

25. On December 23, 2008, Mr. Meyer sent Plaintiffs a copy of the letter sent to CHL on Balboa Insurance Group letterhead. Am. Comp. ¶ 163.

26. On January 8, 2009, Mr. Meyer sent a follow-up letter to CHL misidentifying the Property as single family and denying the claim. In that letter, Mr. Myers referred to a report from Mr. Charles Back of Eagle Adjusting (hereinafter "Back") regarding a questionably faulty furnace flue liner and making no mention of the gasoline vandalism. Am. Comp. ¶ 164. BIN

27. Mr. Charles Back was an agent of Newport. Am. Comp. ¶ 165.

28. On January 9, 2009, Mr. Meyer sent Plaintiffs a copy of the follow-up letter sent to CHL. Am. Comp. ¶ 166.

29. From the date of the incident until December 28, 2008, when Back of Eagle Adjusting made a site visit, CHL/CHLS, CIS, Balboa, and Newport did nothing to protect Plaintiffs' interests in their property. Am. Comp. ¶ 167.

30. Newport failed to properly investigate the claim or provide coverage. Am. Comp. ¶ 168.

31. Balboa failed to properly investigate the claim or provide coverage. Am. Comp. ¶ 169.

32. Plaintiffs lost rental income and had to pay living expenses for themselves and the tenant and could not pay M1 or M2. Am. Comp. ¶ 170.

33. Water pipes froze and leaked from a lack of heat causing real and personal property damage. Am. Comp. ¶ 171.

34. Mold grew from the water from the snow and the broken pipes causing real and personal property damage. Am. Comp. ¶ 172.

35. Further water and ice damage occurred to the real and personal property. Am. Comp. ¶ 173.

36. Plaintiffs were unable to properly occupy the residence due to a lack of heat, electrical services and running water. Am. Comp. ¶ 174.

37. On February 25, 2009, CHL/CHLS notified Plaintiffs of their willingness to modify the M1 loan with an ARM but did not include M2. Am. Comp. ¶ 177.

38. On January 8, 2010, Plaintiffs were notified by Guaetta by certified mail of the assignment of M1 to Deutsche Bank before the alleged January 2010 Assignment.. Am. Comp. ¶ 178. Exhibit F

39. On that January 8, 2010 letter to Plaintiffs, Guaetta stated its representation and agency for Deutsche Bank as Trustee on behalf of the Certificate Holders of Morgan Stanley ABS Capital I Inc. Trust 2004-NC2, Mortgage Pass-Through Certificates, Series 2004-NC2 the present holder of Plaintiff's mortgage to NCMC (M1) but that was nearly three weeks before the January 28, 2010 Assignment. Exhibit F. Am. Comp. ¶ 179.

40. In that letter dated January 8, 2010 to Plaintiffs, Guaetta attempts to collect money and specifically writes in capital letter**s "THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**. Exhibit F.

41. Guaetta failed in its duty to determine the validity of the debt and assignment before using the documents in a foreclosure. Am. Comp. ¶ 180.

42. To information and belief, there is no assignment of M1 or M2 from the New Century Mortgage Corporation Liquidating Trust established for the benefit of NCMC. Am. Comp. ¶ 181.

43. On January 28, 2010, the Corporate Assignment of Mortgage was executed.

44. On January 29, 2010, BACHLS notified Plaintiffs that M1 was referred to their Foreclosure Management Committee for review. Am. Comp. ¶ 182.

45. The purported assignment of M1 was dated January 28, 2010. Am. Comp. ¶ 185.

46. The purported assignment of M1 was to be effective backdated to January 23, 2009. Am. Comp. ¶ 186.

47. The purported assignment of M1 was by NCMC by its attorney in fact. Am. Comp. ¶ 187.

48. The purported assignment of M1 was signed by Keri Selman, asserting herself to be Assistant Vice President of CHL on behalf of NCMC. Am. Comp. ¶ 188. Exhibits L and M

49. The power of attorney from NCMC to CHL was a "limited power of attorney." Am. Comp. ¶ 190.

50. The limited power of attorney from NCMC to CHL was signed by Pamela Rigg, Vice President of NCMC on November 30, 2005. Am. Comp. ¶ 191.

51. The limited power of attorney from NCMC to CHL was signed by two witnesses on November 30, 2005. Am. Comp. ¶ 192.

52. The limited power of attorney from NCMC to CHL was signed by the notary on October 7, 2005, over a month before it was signed by the principal's representative and the witnesses, making the power of attorney invalid. Am. Comp. ¶ 193.

53. On April 2, 2007, NCMC filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. The filing was consolidated by the Court into Docket # 07-10416. Am. Comp. ¶ 194.

54. On July 15, 2008, the Bankruptcy Court approved the Second Amended Joint Chapter 11 Plan of the Debtors and the Official Committee of Unsecured Creditors dated April 23, 2008 and ordered all assets of the debtors transferred to a Liquidating Trust, and all

officers and directors of the Debtors to cease to serve in those capacities. Am. Comp. ¶ 195. Exhibit C.

55. CHL knew or should have known that, due to the bankruptcy of its principal, its limited power of attorney was void no later than July 15, 2008 (if it was not void *ab initio* or insufficiency of the November 30, 2005 limited power of attorney document). Am. Comp. ¶ 196.

56. Keri Selman knew or should have known that she had no authority and signed documents misrepresenting her authority by executing the purported assignment of M1. Am. Comp. ¶ 197.

57. In the instant case, Keri Selman represented herself in court documents as an "Assistant Vice-President" of CHL. Am. Comp. ¶ 198. Exhibit L and M.

*58.* Keri Selman has previously represented herself in court documents as an "Assistant Vice-President of the Bank of New York." See the Decision and Order of Honorable Arthur M. Schack, J.S.C. in *Bank of New York as Trustee for the Noteholders of CWABS, Inc. Asset-Backed Notes, Series 2006-SD2 v. Sandra Orosco, et. al.*. With regard to Ms. Selman, Judge Schack expressed concern about "subterfuge, wearing various corporate hats" and ruled "Before granting an application for an order of reference, the Court requires an affidavit from Ms. Selman describing her employment history for the past three years." Am. Comp. ¶ 199.

59. Keri Selman has previously represented herself in court documents as "an Assistant Vice-President" of MERS. MERS stands for Mortgage Electronic Registration Systems, Inc.. See the Decision and Order of Honorable Arthur M. Schack, J.S.C. in *Bank of New York*

*as Trustee for the Certificateholders of CWABS, Inc. Asset-Backed Certificates, Series 2006-22 v. Cremston Myers, et. al..* Am. Comp. ¶ 200.

60. Keri Selman, to information and belief, has materially falsified multiple court documents and affidavits. Am. Comp. ¶ 201.

61. CHL had no power of attorney on January 28, 2010 or on January 23, 2009 to execute any assignment on behalf of NCMC to Deutsche Bank. Am. Comp. ¶ 202.

62. In addition, the purported assignment of the mortgage referenced in the assignment dated January 28, 2010 (apparently M1) that allegedly occurred on or about October 10, 2003 does not describe the mortgaged property with any particularity and is assigned in blank making the assignment void.. Am. Comp. ¶ 203.

63. Also, the purported assignment of the note referenced in the assignment dated January 28, 2010 (apparently related to M1) that allegedly occurred on or about October 10, 2003 is not dated, is not notarized, appears to bear a signature stamp without indication of the authority to use the stamp or by who it was used and is assigned in blank making it bearer paper. Am. Comp. ¶ 204.

64. Deutsche Bank has provided no currently dated and notarized copy of the purported assigned-in-blank M1 or the purported assigned-in-blank accompanying note to prove that it is the real holder of the bearer paper and entitled to the rights of ownership. Am. Comp. ¶ 205.

65. The January 28, 2010 assignment of M1 is a false and misleading document designed to assist Deutsche Bank, Bank of America Corporation, BACHLS (successor to CHLS), Countrywide Home Loans, Inc., and Guaetta to collect a debt. Am. Comp. ¶ 206.

66. Deutsche Bank, as trustees on behalf of the Certificate Holders of Morgan Stanley ABS Capital I Inc. Trust 2004-NC2, Mortgage Pass-Through Certificates, Series 2004- NC2 c/o BAC Home Loan Servicing, LP f/k/a Countrywide Home Loans Servicing, LP (CHLS) 7105 Corporate Drive, Plano, Texas 75024 does not have lawful assignment of the mortgage to the Property. Am. Comp. ¶ 207.

67. To information and belief, Deutsche Bank as trustee could not include in a Series 2004-NC2 Mortgage Pass-Through Certificate a mortgage not acquired until 2009 or 2010 and that attempted acquisition was invalid. Am. Comp. ¶ 208.

68.  CHL, BACHLS and Deutsche Bank all have no authority to foreclose on the Property. Am. Comp. ¶ 209.

69. BAC as parent to CHL and CHLS has no authority to foreclose on the Property. Am. Comp. ¶ 210.

70. To information and belief, there is no record of a purported assignment of M2 to anyone. Am. Comp. ¶ 211.

71. As a result of the vandalism and both the failure of CHL to pay the insurance premium, the failure of CIS to ensure coordination of the insurance premium payment, and the failure of Balboa and/or Newport to honor their contractual commitments or agency liability the failure of Balboa and/or Newport to honor their contractual commitments or agency liability, Plaintiffs have been damaged as outlined, in part, below:

    a. Loss of use of the property.

    b. Loss of rent.

    c. Loss of money to pay the mortgage.

    d. Loss of personal property.

e. Damage to the structure by broken pipes, mold, floor buckling and lifting, broken walls and ceilings, among other damages.

f. Significant emotional stress.

g. Loss of insurance coverage for the mortgage payments.

h. Loss of adequate dwelling coverage.

i. Loss of adequate liability coverage.

j. Loss of adequate medical payments coverage.

k. Threatened foreclosure.

l. Additional living expenses due to the inability to live normally in the house in its current condition.

m. Harm to their credit and reputations.

n. Loss of asset value.                                    Am. Comp. ¶ 212.

72. Due to the failure of CHL/CHLS to pay for the insurance, Plaintiffs were denied coverage when CHL/CHLS placed the insurance with a company not licensed in Massachusetts at higher cost with lower coverage. CHL/CHLS had a duty to fulfill the agreement for tax and insurance payments through the escrow account as negotiated and CIS had a duty to coordinate the payment of the agreed coverage with CHL/CHLS as promised for the business it sought for its principal Balboa. Balboa also had a duty to coordinate payment of the coverage as agreed and is liable for the breach of contract of its agent, CIS. Am. Comp. ¶ 223.

73. Newport never sent a copy of the lender placed policy to Plaintiffs but in the papers submitted as Appendices to its Motion to Dismiss Plaintiffs' Complaint, Newport indicates coverage for vandalism. The Newport policy, if ambiguous, should be

interpreted against the drafter resulting in coverage for vandalism damages. Newport breached its contract for coverage when it denied coverage for the vandalism. Am. Comp. ¶ 224.

74. Due to the denial of coverage, Plaintiffs were unable to protect, repair, or replace the property that was damaged or obtain the rent that helped pay the mortgage. Am. Comp. ¶ 225.

75. BAC failed to put in place systems to ensure that its subordinate or affiliated business entities were conducting business in a lawful and fair manner and failed to provide appropriate oversight supervision of a myriad of confusing business entities. Am. Comp. ¶ 228.

76. BAC, BACHLS (and its predecessor CHLS), CHL, Deutsche Bank and Guaetta and Benson failed Benson failed in their duty to set up systems to ensure the proper servicing of mortgages, the proper payment of escrow expenses, and the appropriate coordination and verification of assignments and the protection of property assets and in their duty to adequately and fully communicate in an informed manner with Plaintiffs. They also failed in their duty to competently verify the validity of any assignments before taking legal action and damaging Plaintiffs. Am. Comp. ¶ 229.

77. BIS (and its predecessor CIS) failed in its duty to coordinate coverage of property and ensure continued coverage as agreed and promised and to coordinate communication between the different business entities (insurance and insurance servicing) and Plaintiffs. Am. Comp. ¶ 230.

78. Balboa failed in its duty to ensure the payment was made where it was to be made through the escrow and failed to appropriately coordinate and fully and in an informed

manner communicate with Plaintiffs and its agent BIS (successor to CIS). Am. Comp. ¶ 231.

79. Balboa failed to promptly and adequately investigate and adjust the insurance claim for damages. Am. Comp. ¶ 232.

80. Newport failed to promptly and adequately investigate and adjust the insurance claim and failed in its duty not to issue insurance in a state where it is apparently not licensed. Am. Comp. ¶ 233.

81. Newport is liable for the negligence of its agent Back in failing to promptly and adequately investigate the insurance claim. Am. Comp. ¶ 234.

82. Deutsche Bank and Guaetta and Benson failed in their duty to competently verify   the validity of any assignments before taking legal action and damaging Plaintiffs. Am. Comp. ¶ 235.

83. Deutsche Bank failed in its duty to set up systems to ensure the proper servicing of purported mortgages and the appropriate coordination and verification of assignments and protection of property assets and to adequately and fully communicate in an informed manner with Plaintiffs. Am. Comp. ¶ 236.

84. Defendants Balboa and Newport failed in their statutory duties to fairly investigate and settle the claim for loss arising under the Policy, in violation of Mass. Gen. Laws ch. 176D. Am. Comp. ¶ 241.

85. Defendants Balboa and Newport failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policy, in violation of Mass. Gen. Laws ch. 176D, § 9(b). Am. Comp. ¶ 242.

86. Defendants Balboa and Newport failed to adopt and implement reasonable standards for the prompt investigation of claims arising under the Policy, in violation of Mass. Gen. Laws ch. 176D, § 9(c). Am. Comp. ¶ 243.

87. Defendants Balboa and Newport refused to pay Plaintiff's claims and failed to conduct a reasonable investigation based upon all available information in violation of Mass. Gen. Laws ch. 176D, § 9(d). Am. Comp. ¶ 244.

88. Defendants Balboa and Newport failed to effectuate prompt, fair and equitable settlements of Plaintiff's claims in which liability has become reasonably clear in violation of Mass. Gen. Laws ch. 176D, § 9(e). Am. Comp. ¶ 245.

89. Defendants Balboa and Newport have compelled Plaintiff to institute litigation to recover amounts due under the Policy by offering substantially less (translated as nothing) than the amounts lost in violation of Mass. Gen. Laws ch. 176D, § 9(f). Am. Comp. ¶ 246.

90. Defendants Balboa and Newport attempted to settle Plaintiff's claim for less (translated as nothing) than the amount to which a reasonable man would have believed he was entitled by reference to the written Policy in violation of Mass. Gen. Laws ch. 176D, § 9(g). Am. Comp. ¶ 247.

91. Defendants Balboa and Newport failed to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement in violation of Mass. Gen. Laws ch. 176D. Am. Comp. ¶ 248.

92. Defendants knew or should have known that consumers would rely on the representations of corporations and companies to service mortgage loans fairly and honestly. By alleging a power of attorney in papers filed in the Registry of Deeds and before the various courts

within the Commonwealth when the agency relationship had ceased, and where that power was faulty *ab. initio*, Defendants misrepresented issues of material fact to enable them to obtain property not rightfully belonging to them. By knowingly or with willful disregard for the truth, Defendants caused the signing and/or use of the false and misleading January 28, 2010 purported assignment of M1 from NCMC to Deutsche Bank as Trustee of a group of pooled securities long after the pool closed and long after NCMC went bankrupt terminating all agency relationships (even if agency ever existed which Plaintiffs dispute) and long after the pool closed. Am. Comp. ¶ 251.

93. Defendants submitted (or their agents on their behalf submitted) the false and misleading January 28, 2010 purported assignment to the Massachusetts Land Court and to the Federal Court for the District of Massachusetts knowingly or with willful disregard for the truth in order to collect a debt. Am. Comp. ¶ 264.

94. To information and belief, there exists no assignment of M2 from New Century Mortgage Corporation Liquidating Trust, making the foreclosure notices sent by Defendants BAC, BACHLS and CHL false and misleading. Am. Comp. ¶ 265.

95. Defendants harassed Plaintiffs and attempted to sell the property at auction in order to collect the debts, all in violation of the FDCPA. Am. Comp. ¶ 266.

96. By alleging assignment of M1 from NCMC to Deutsche Bank, to information and belief, BAC, BACHLS, CHL and Deutsche Bank have apparently converted the asset to asset to their financial benefit, unless they can produce the original 2003 assignment in blank of the note (and the Court accepts a mortgage assignment that fails to describe the property assigned). Am. Comp. ¶ 270.

97. By collecting payments on M2, BAC, BACHLS (and its predecessor CHLS), and CHL have apparently converted the asset to their financial benefit, damaging Plaintiffs when the rightful owner, New Century Mortgage Corporation Liquidating Trust seeks payment for arreared amounts and institutes foreclosure proceedings of its own. Am. Comp. ¶ 271.

98. Guaetta submitted a copy of the January 28, 2010 purported assignment of M1 from NCMC by CHL, as attorney-in-fact, to Deutsche Bank or the substance of the assignment to the Massachusetts Land Court for the purpose of foreclosing on M1 and collecting a debt. Am. Comp. ¶ 280.

99. When Guaetta submitted a copy of the January 28, 2010 purported assignment of M1 from NCMC by CHL, as attorney-in-fact, to Deutsche Bank to the Land Court, Guaetta was acting on behalf of Deutsche Bank, the servicing company (BACHLS), and BAC. Am. Comp. ¶ 281.

100. Defendants knew or should have known that Plaintiffs and the Court would rely on their purported assignment of M1 from NCMC by CHL to Deutsche Bank. Am. Comp. ¶ 282.

101. Neither the O'Donoghue first mortgage (M1) or second mortgage (M2) was declared in default prior to January 1999.

James P. O'Donoghue and
Adriana G. O'Donoghue,
On behalf of themselves and all others
similarly situated,
By their attorney,

/s/ Walter H. Jacobs
_____
WALTER H. JACOBS
BBO # 672106
W. Jacobs & Associates at Law, L.L.C.
795 Turnpike Road
North Andover, MA 01845
978-688-0900

DATED: December 30, 2011

## CERTIFICATE OF COMPLIANCE

I hereby certify, in compliance with Local Rule 7.1(a)(2), that I have conferred with Defendants' counsel and have attempted in good faith to resolve or narrow the issues raised herein on multiple occasions but not been successful.

/s/ Walter H. Jacobs
_____
WALTER H. JACOBS

## CERTIFICATE OF SERVICE

I hereby certify, in compliance with Local Rule 5.2 and the F. R. Civ. P. 5, that a true copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Walter H. Jacobs
_____
DATED: December 30, 2011                    WALTER H. JACOBS

17